Douglas Trent v. The City of Wheaton If I may proceed on what I consider to be an extremely complicated matter. I have much apprehension appearing before the justices, but I feel confident in the brief we wrote. In the five districts in the state of Illinois, I think the second district has the best understanding of what the law is with regard to a motion for summary judgment. And I cited several cases in my brief. And what is a little perplexing to me in reviewing the record, when the motion was presented to Judge Poljoy on May 1st of 2012, in reading the motion and the answer and the decision, the law applicable to this case in the second district was never cited or discussed. We delineated it carefully in our brief. Counsel for the appellee in his brief carefully avoided what I consider to be the law in the second district with regard to a motion for summary judgment. Let me start by citing that case. Now, what the second district did in the Wrap Breaker case, cited in the brief at 183 Illinois Appellate 3rd, page 847, and more recently, which is even more astounding, in the case of Borchers v. Franciscan, be cited on December 11, 2011, in the second district. When this motion for summary judgment was presented to Judge Poljoy on May 1, 2012, all parties should have had knowledge and a good understanding of what the case law is in the second district with regard to a motion for summary judgment and what the elements of it. Now, with your permission, I have in front of me the main case, in my opinion, is the one Wrap Breaker that I just cited. But in Borchers, in citing Wrap Breaker on page 8, page 15, subparagraph 30, as summary judgment must be reserved for cases in which there is no question of material fact. That's elementary in all the districts. It generally should not be used when a party's intent is a central issue in the case. That's where the second district really, in my opinion, has a good understanding of the law. So the second district, in their case law, clearly states that it is more than just, you know, beyond questions of law, is there a genuine issue of material fact. And so aside from not actually mentioning a case, what do you feel Judge Poljoy did not consider? He did not consider what particularly Detective Erler did in this case. What was what was Detective Erler's motive, intent, and subjective feelings and reactions in investigating this case? We delineated 10 to 20 things that he did, which clearly reflect perhaps a willful and blunt attitude towards Mrs. Trombetta in investigating this case. Questions of motive, intent, and the subjective feelings. No evidence ever presented. Are we pleased to corroborate verbal allegations of Nancy and Brandon Andrews? No written statement taken from Brandon Andrews, and he was never made available for questioning to the Department of Children and Family Services. Mrs. Trombetta provided to Detective Erler names of at least 19 people who had knowledge of allegations, but none of those people were contacted for an interview by Detective Erler during this investigation. City of Wheaton did not follow protocol when patrol officers interviewed alleged victims instead of forwarding investigation to the Children's Center. Is that misconduct, or is that negligence, or is that even possibly neither? Well, it's a question of fact to be determined, to move beyond the motion for summary judgment, not to be decided on a motion for summary judgment. It's a question of material fact that takes it outside the purview and the parameters of a motion for summary judgment. These are questions of motive, intent, and subjective feelings of Detective Erler. Your Honor, I could go on. I have 10 to 20 statements like that that we carefully delineated in our brief that raises these questions of a material fact, which, according to the case law that I just cited, takes it outside. A motion for summary judgment should not have been granted in this case, just based on the case law and the things I indicated. Now, by granting the motion for summary judgment, a defamation claim was dismissed by Mrs. Trombetta against Detective Erler and the City of Wheaton. If you look at what Detective Erler did, did he make a false statement in his investigation about Mrs. Trombetta? Did he make a privileged publication of statements to third parties with regard to his investigation? And then, did this publication and his behavior, I submit perhaps this willful and wise behavior that could be determined at a trial, pass the motion for summary judgment? Did he fabricate an admission of guilt by Mrs. Trombetta to certain parties during his investigation? Did he state to at least two witnesses that Mrs. Trombetta committed a crime? Did he make a statement that a videotape portrayed evidence of a crime which he previously admitted no crime occurred? This all goes to his motive, his intent, his willful and wanton behavior with regard to the claim of defamation. Now, with regard to Mrs. Trombetta, obviously suffered damages because of his behavior. She also had a claim for intentional inflection of emotional distress dismissed. Was Detective Erler's behavior during his investigation by the Wheaton Police Department extreme and outrageous? Did his conduct cause Mrs. Trombetta severe emotional distress? But those are questions and issues to be decided at the trial level. Just based on the things I delineated here that were brought out through depositions and other discovery procedures prior to the motion for summary judgment being presented takes it outside the purview of a motion for summary judgment being granted. Your Honor, you asked me a question. I don't have an answer because we haven't had a trial going to its motive, intent and the subjective feelings. But his behavior alone brings them outside the purview of a motion for summary judgment. Now, I'm sorry. You said you have many allegations. Give me at least one or two particular allegations that you believe are so obvious. Right. Right. None of the persons interviewed by Detective Erler corroborated any chargeable crime committed by Mrs. Mrs. Trombetta or corroborated by Brandon Andrews' allegation of sexual molestation. These are serious matters. OK. And so if that's true, what should he have done or not done? I mean, what's the next step? That's an allegation. But what does that mean? That because they did this, he should have stopped and he didn't. He should have gone back and reported. He should have turned it over. I know what the allegations are. But as a result of those allegations, what should have happened? Well, as a result of the allegations, we was Mrs. Trombetta defamed? Her character defamed? Was she slandered? Was what? We don't know until we have a trial. What was the motive, intent and subjective feelings of Detective Erler? Was the detective told to investigate something? Yes. And did he do these and did he do these things that you're alleging during the course of that investigation? Some of these things. No, he did not do. He did not do them appropriately and properly. His protocol was was not complete. OK, if if if if Mrs. Trombetta alleges she was stalked and harassed by Wheaton police vehicles, perhaps Detective Erler, did Detective Erler attempt to sway answers of witnesses involved in this case? These are these are all serious allegations against Detective Erler. Things he did do inappropriately, things he didn't do that he should have done. And so we perhaps a trial would would ascertain what his motive, intent and subjective feelings were and that they result in willful and want behavior by him. That's the purpose of the trial is to ascertain whether or not what what is demeanor and attitude was during the course of this investigation. When then do we make when do we start considering that if he is ordered to do this work and it is work within his job description and he is a public servant, when do we put the layer of is he immune from this conduct? Well, even if it's true with regard to the unity aspect of the case, if I may address the common law immunity, there's no automatic immunity as we addressed in our brief, particularly the Stratton versus Brent case, which was a second district case decided in 1997. That wasn't in the course of course of his official duties. Right. Chief Brent talks to a potential future employer of officer Stratton tells him he's not a good employee. Don't hire him. It's not in the course of his official duties as police officer. Correct. But if I made statements in the actions of Werler were not specific to his position, it did not further any governmental policy or goal. The courts must make factual determinations that his acts or omissions are within the scope of his official duties. We haven't reached that threshold yet by not having a trial. We don't have answers to those questions yet. If we have a trial, the motion for summary judgment would have been denied and we had a trial. Then we could ascertain the answers to those questions. But now we don't know the answers. I'm not capable of answering them because we haven't had that trial yet. We haven't had detective Werler under oath. We haven't had him cross examined. We haven't had a chance to impeach him or to test him for his veracity or a prior inconsistent statement of what his motive and intent were. We do know we have some facts with regard to his investigation that perhaps his behavior was willful and wanton. What was his motive? What was his intent? That's what the trial is about. That's what this case says, that we should deny the motion for summary judgment and go into. Indeed, we have repeatedly held that summary judgment is particularly inappropriate for the inferences. All we need are reasonable inferences now, which the parties seek to draw and deal with questions of motive, intent, and subjective feelings and reactions. This case comes right on point with that case. The only way we can answer these questions is to have a trial, not to submit or dismiss it on a motion for summary judgment. There was a deposition of this officer prior to the motion for summary judgment, and he was, I'm assuming, at a deposition cross examined, correct? I mean, he was examined and he was cross examined. Yes. And the questions that you or these, this conduct that you allege, I'm assuming was discussed during that deposition, correct? Well, it was limited. The questions were asked. I was not present. I did not take the deposition. Questions were asked of Detective Erler, and these points that I referenced were brought out. Yes. But that's not, as you know, that's far from being a trial. No, I understand that, but the issue, excuse me, the issue of when he did these things and in reference to what he did these things would have been brought up there, and the bottom line was during all of these things, he was still under order of the chief or detective or whoever sent him out to investigate this, correct? Yes, ma'am. Okay. Justice Jordan, what allegations would you point to that would fall outside of any scope of immunity? All right. If I may, my notes indicate, and I want to be very careful what I say here, I was not the trial attorney, but I have carefully reviewed the record. Detective Erler did the following. He made false reports to the Department of Children and Family Service made upon admissions. He disregarded evidence relating to Mrs. Trombetta's innocence, failed to provide police reports in the discovery process as requested. Good faith is required for immunity to attach, and it is apparent that his actions and omissions were not made in good faith. The state's attorney's office of DuPage County chose not to indict Mrs. Trombetta. But does that establish that he did not act in good faith? Because the prosecutor has the sole discretion in charging. We don't know until we have a trial and a trier of fact. Either the judge or the jury trial makes these determinations and brings them within the purview of defamation or intentional infliction of emotional distress. I cannot answer that question at this time. I have not questioned Detective Erler. But somebody did who represented your client is the point. And just because it wasn't you doesn't mean it didn't elicit important facts, correct? Yes, but the ones I've delineated raises a question of motive and intent on his behavior. If we raise that question, then it takes it outside the purview of emotion being granted for summary judgment, according to the case law in the 2nd District, which is very clear. We have raised questions of material fact. This is not a case to be decided strictly on the law. You'll have an opportunity for your bottle after counsel. Thank you. Counsel, good afternoon. Good afternoon. May it please the Justices, Mr. Trent, my associate, Mr. Kruze. We can stand and we can maintain all kinds of general concepts associated with summary judgment. And the general concept that Mr. Trent articulated is not one that I would disagree with in terms of the general concept. But in a case like this, you have to look at the specific facts and you have to look at the record that was before the trial court in determining whether or not the trial court made those determinations. And what has been ignored... Can you stay near the microphone because this is being recorded for posterity. That's from my standpoint, probably unfortunate. What is very clear is that what has been ignored in this case by the appellant is the record that was before Judge Polkjoy. As a matter of fact, if you look at the reply, the appellate reply brief in this case, you see that what they try to do is they try to go back and they try to establish issues of material fact by citing to documents and exhibits that were stricken by Judge Polkjoy. They did not appeal the striking of those documents. They relied primarily on uncertified transcripts of a hearing before the Department of Children and Family Services. Those were stricken by Judge Polkjoy. They did not appeal the striking of that, which means that when Judge Polkjoy made his ruling, he was relying on the fact that we were going on the actual evidence that had been submitted before the court and not something that he had stricken and didn't consider. We have cited to you the reasons why that was appropriate to strike because we weren't sure whether we needed to make that alternative argument. I do want to point out to your honors, if I may, that as I was doing my preparations this morning and some ancillary research because I didn't know exactly what you were going to be asking me, I actually came across a second district case which is in point with regard to this issue and I would like to cite it to your justices if you would. Do you have copies for us or a copy for counsel at this time? I'm sorry, I do not. May I cite the case? You may cite it. The case is Saurerst versus the City of Woodstock, 113 Illapp 3rd, 892. I think if you read that case, you'll see what that case stands for is the proposition that an uncertified record of a statement is as a matter of law legally insufficient and cannot be considered to raise issues of material fact in summary judgment motions. When we deal with the question in this case of these transcripts before DCFS, those were stricken, they were not considered by Judge Popejoy and you see absolutely nothing in any of the materials that say that that decision was incorrect. But what do they do? They rely on that information in an effort to try to create a material issue of fact. I would suggest to you though that even if you say that those documents are admissible, they don't create an issue of fact. Because what's the other thing that gets ignored by the abbey in this case? The various immunities that Judge Popejoy relied upon in determining that summary judgment was appropriate in this case. Let me ask one other question with reference to stricken, although as you say it's not specifically before us. He struck those records because they were uncertified. Did he strike any other issues for other reasons? Yes. Naturally he didn't strike them because they were uncertified alone. He struck them because of Supreme Court rules. The fact that my client was not a party in that matter, my client did not have the opportunity to have his counsel present to do the necessary cross-examination that would have been done under the Supreme Court rules associated with the admission of those transcripts. And fundamentally because there was nothing to establish that the declarants or the witnesses in those statements were not present or available for deposition. And their depositions weren't taken in this case. So as a consequence, the record before Judge Popejoy did not reflect that. What else did he strike? Well, let's ask this question. Did he strike anything as being too old, late?  And what was that? That was the deposition in the affidavit of Estelle Peabody. The deposition in the affidavit of Estelle Peabody are very interesting in this case. We didn't reference those in a lot of detail before your honors because they were stricken. And again, they are not part of this record for purposes of this hearing. But he struck those because those facts and those allegations were brought forward after the statute of limitations expired with regard to these defendants. So he struck those. Again, they attempt to cite those in memories as some basis to establish an issue of fact in this case. They are not a record for purposes of the summary judgment motion and shouldn't be. What's more interesting, however, and I don't think they presented those documents to you, and if they're going to rely on them, I believe that they should. If you read that deposition and you read that affidavit, you find that that affidavit is severely wanted in terms of its accuracy. It is not accurate. It is not correct. It is not true, and the witness admitted that under oath. So what does that leave us with? That leaves us with an attempt to establish material issues of fact based on documents that aren't before the court, that they haven't appealed to before the court, and they're saying somehow are material. It doesn't go to the issue of the immunities that Judge Popejoy applied based upon the record in this case. And I believe that those immunities were applied in an absolutely correct fashion under the circumstances. This is an investigation. It is not the bringing of criminal charges. It is an investigation and a situation which was a mandatory reporting situation for the Wheaton Police Department under the rules established by this court. If you look at the case of Doe versus. And I apologize. If you look at the case of Doe. Is it out of Lake Forest? I believe there's two of them. There's one out of Lake Forest and there's Doe versus Dombroski.  This court ruled that in a situation where a minor and a parent of that minor make a report that falls within the ambit of child sexual abuse, that the police department or the mandatory reporter must report that to DCFS. Now, what I would say is there should be an ancillary concept associated with that. And the ancillary concept would be if this court says that you must report that, is it then bad faith to investigate it? Because that's all this was. This was an investigation. And these alleged concepts of bad faith and bad motive, if you read the record, if you read the transcripts and the citations to the witnesses that we deposed in this case that they alleged were witnesses to all of these terrible defamations, you will not find a single statement, a single statement by any of those witnesses that there is a defamatory comment made by Detective Euler or that he was acting outside the scope of his duty. In fact, as far as the scope of his duty goes, that's not an issue on appeal either. There's never been any challenge that he wasn't acting within the scope of his duty. And once that scope is triggered, the immunities are triggered. They're affirmative. They must be based on evidence. But that's what the evidence shows here. Well, I mean, there's one that sort of stands out, and that is, all right, it's Detective Euler who's charged with this, and the City of Wheaton is involved because the police department's involved on behalf of the City of Wheaton. What is this allegation about the stalking? Is this timely? Is it not timely? Is it stricken? Where did it fall? It doesn't fall anywhere. It only falls in the subsequent pleadings. It is not in the complaint. It is beyond the statute of limitations. So it was placed into an attempted amended complaint? No, it wasn't. It is in no pleading in the form of a complaint. It doesn't exist. All of the allegations associated with these things that, you know, occurred at DCFS, not in the complaint. They're nowhere to be found. Now, I understand the rules associated with amending complaints, but all of the City and Detective Euler's discovery in this case was conducted based on what was in the complaints we were looking at. And there was a lot of pleading practice in this case. We went through a complaint, an amended complaint, a bill of particulars. I mean, there was a lot that led up to the point where we finally, after taking depositions of the witnesses, including Detective Euler, who was deposed, where they secured no evidence of these allegations that they've made. That we felt that we could bring a summary judgment motion based upon the record that existed at that point in time. Now, again, the summary judgment isn't determined based upon some nebulous concept pertaining to what is in a person's state of mind at a particular point in time. Unless the record can support that, and it supports it outside the context of the Governmental Employees Toward Immunity Act. And in this case, on this record, you have nothing to support that. I encourage you to read the deposition testimony of all of the witnesses that they said had defamatory statements made to them that are in the record before Judge Polkjoy. You will not find a single defamatory statement in those records. But I would also suggest to you, even if there was a statement in those records that may have crossed the line in some respects, Detective Euler is immune. Detectives have to be able to talk to witnesses. If you say to a detective, you know, you can investigate a crime, but we don't want you to ask questions about the crime, you might as well shut down law enforcement. Is there a difference between asking the question and making a statement? No, I don't believe so. The appellate courts, the United States Supreme Court, for example, has held that you can lie as a police officer to witnesses to secure a confession. Let's assume it was a lie for purposes of argument, and it was a strategic methodology used in the discretion of the detective in order to attempt to secure truth. That's not a record in this case, Justice Jorgensen, but I'm trying to answer your question. In that circumstance, that is a discretionary activity exercised by a detective in the course of his law enforcement. Think about what they're actually asking you to do here. What they're saying is, we want you to come up with a rule of law that would establish when a detective, in the course of an investigation, should stop the investigation. Well, then let's ask this question. Mr. Trent said the state's attorney chose not to prosecute. I assume that at some point, this information was presented to the state's attorney, and they have prosecutorial discretion. Are any of the allegations in the complaint relevant to after the state's attorney, or relate to after the state's attorney declined prosecution? Nothing of record that was before Judge Popejoy at the time that he made his determination. Nothing. But some of these other documents or some of these other issues that you've discussed, may, some of the stricken matters, or even some of the other matters, I'm not sure what we'd call them. Yeah, you know, I don't know, Justice Hutchinson, whether the DCFS hearing occurred before the felony screening of the allegations, or whether they didn't. Police officers go in the state's attorney's office to see whether or not the charges will or will not be authorized. That's a common procedure. It's because that determination should be made by the state's attorneys and not the police officer. What they're basically telling you in their complaint is, they want you to come up with a rule that says to a police officer, if you don't make the right judgment in your investigative discretion as to when you should stop that investigation, you're somehow liable. That would be an incredible rule of law that would be so burdensome on law enforcement in the state. My suggestion to you would be, it would shut down criminal investigations in the state where you had a situation where it was a he said, she said, you said, I said. There's no question in this case, for example, and I can think of one exception where I think that from a constitutional standpoint, it would be one. If there had been evidence, which there's not, for example, of some kind of collaboration between Detective Euler and Nancy Andrews, the mother of Chuck. Say, for example, they were dating and they really wanted to get Mrs. Trombetta. Absolutely wrong. Violation of constitutional rights. There is no evidence of anything like that. The only evidence is you have a mother coming to both the school and the police station saying there's an inappropriate relationship between my child and this person. You have the child coming in and then ultimately saying there was an act of sexual abuse committed on me. And then you have that information assigned by a sergeant of detectives to a detective with the direction to investigate. He investigates it. Their complaint is, he investigated it. That's really what this boils down to in the final analysis. And based on this record, Judge Polkjoy was absolutely correct because the immunities are clearly applicable under these circumstances. Thank you. Thank you very much.  Well, I am going to say, Mr. Tremblay, we have not written anybody yet today and we don't intend to before the end of the day. But let me add, after hearing Mr. Kneppen, I couldn't wait to get up here to address the justices. Because all Mr. Kneppen did in this argument, from my perspective, was raise questions of fact, material fact, which defeats a motion for a summary judgment. But what complaint are we operating on? First Amendment complaint? Second Amendment complaint? Well, I've been doing this a long time, like I'm sure the three of you have. Defamation claim. You allege that the defendant made a false statement about plaintiff. There was no privileged publication of statement to the third party and the publication caused damages. And then you left some facts. Now, if you want to file a motion to strike an amended complaint, do so. And then Judge Polkjoy would have taken that into consideration and stricken the complaint. That's for a defamation claim. Now, for intentional inflection of emotional distress, if you allege conduct truly extreme and outrageous, the actor intended conduct to inflict severe distress, I knew that there was a high probability that conduct would inflict such distress. Conduct, in fact, caused severe emotional distress. Now we're talking about the elements with regard to a complaint. I think those elements were properly alleged in the complaint. But more importantly, when we talk about when Mr. Knappen raises the common law absolute immunity, it is not a complete immunity. Courts must make factual determination that acts or omissions are within the scope of an official's duties. We haven't reached that level yet with regard to this matter. The Illinois Tort Immunity Act Intent of Act does not absolve government employees from slanderous acts and are willful and wanton conduct that I submit is present in this case. If he talks about the Immunity Abuse and Neglected Child Reporting Act, immunity provides immunity for disclosure, disclosures of information which are made in good faith. And willful and wanton disclosures do not fall within that area. I submit once again, do we know what, we haven't had a trial yet to determine the motive intent with regard to Detective Earler. But there has to be a complaint from which everybody's operating, a complaint and an answer or a complaint and a motion. And what is, was, I know there, the first complaint filed was amended. Yes. Was that first amended complaint also amended? I believe there was one, one first amended complaint. Just, so we don't go to a second amended complaint or a third amended complaint? I don't think so. Okay. I don't think so. Because that's what's in your brief. You've included in your appendix a first amended complaint at large. Yes. So that's the one we're operating on. If I may, Judge Popejoy and counsel for the plaintiff and defendant didn't come close, didn't come close to citing the law in the second district with regard to a motion for a summary judgment. And Mr. Knippen is an extremely competent attorney. I've known him for years in his office. But in his brief, if you look in his brief, he completely avoided the case law in the second district with regard to a motion for summary judgment. And there was a reason he did that. I submit perhaps he intentionally did that because we are on solid ground with the second district here and the law with regard to a motion for summary judgment. Judge Popejoy's order is pretty basic. I'm sure he said many things during argument and things that he heard. Are you saying that he had to make specific findings in order to grant this and he didn't do that? Or we learn his position since we're on a de novo review by looking at the same facts he looks at and see if the summary judgment elements apply. I don't think he even took him. He took into consideration what the law is in the second district and the cases I cited with regard to motion for a summary judgment. If I was on the bench and I heard this motion for summary judgment, I would like to think I would have a good understanding of what the law is in the second district with the motion for summary judgment. If you had a case decided way back, I think, in 1989 or 1999, which is the leading case, we have no difficulty finding it. And that led to the case decided on December 7, 2011, the most recent case, well before Judge Popejoy's decision, May 1, 2012. I'm not here to criticize anybody. I have no right to do that. But I'm just pointing out to the justices that this law should have been followed in this motion. He never references it. In looking at the finance motion for summary judgment, it's not referenced. Plaintiffs reply or response to the motion for summary judgment. The law isn't taken into consideration. And nowhere on Judge Popejoy's decision is the law taken into consideration. And I just think that that's wrong. That's incomplete. All right. Thank you very much. Thank you both for argument. Thank you both for coming in at 2 o'clock in the afternoon, which is really unusual for argument. We appreciate your time. We will take the decision under advisement, issue a decision in due course, and we will now stand adjourned. Thank you.